UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| 2002 CADILLAC ESCALADE, VEHICLE ) | |
| IDENTIFICATION NUMBER ) | **05-30156-KPN** |
| 3GYEK63N92G219882 ) | |
| Defendant. | |

### VERIFIED COMPLAINT FOR FORFEITURE IN REM

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, in a civil action of forfeiture pursuant to Title 21, United States Code, Section 881(a)(6), alleges that:

1. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§1345 and 1355. Venue is appropriate pursuant to 28 U.S.C. §1395.

2. The property consists of one 2002 Cadillac Escalade, Vehicle Identification Number 3GYEK63N92G219882, seized by the United States Drug Enforcement Administration on February 18, 2005, from North Branch Parkway, Springfield, Massachusetts (the "Defendant Vehicle").

3. The in rem Defendant Vehicle is now, and, during the pendency of this action, will be within the jurisdiction of this Court.

4. As detailed in the Affidavit of United States Drug Enforcement Administration Special Agent John Barron, attached as

Exhibit A and incorporated herein by reference, the United States has probable cause to believe that the Defendant Vehicle is subject to forfeiture to the United States, as it represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act, Title 21, United States Code, Sections 801 et seq. (the "Controlled Substances Act"), and therefore are subject to seizure and forfeiture to the United States pursuant to 21 U.S.C. §881(a)(6).

WHEREFORE, the United States of America prays:

1. That a Warrant and Monition, in the form submitted herewith, be issued to the United States Marshal for the District of Massachusetts commanding him to take custody of the Defendant Vehicle and give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

2. That judgment of forfeiture be decreed against the Defendant Vehicle;

3. That thereafter, the Defendant Vehicle be disposed of according to law; and

4. For costs and all other relief to which the United States may be entitled.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
JENNIFER H. ZACKS
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Date: 6/24/03

3

## VERIFICATION

I, John Barron, Special Agent, United States Drug Enforcement Administration, state that I have read the foregoing Verified Complaint for Forfeiture In Rem, and that the contents thereof are true to the best of my knowledge, information and belief.

_____
John Barron, Special Agent
United States Drug
Enforcement Administration

Date:

COMMONWEALTH OF MASSACHUSETTS

Hampden, ss.                                                Springfield

Then personally appeared before me the above-named John Barron, Special Agent, United States Drug Enforcement Administration, who acknowledged the foregoing to be true to the best of his knowledge, information and belief, on behalf of the United States of America.

Subscribed to and sworn to before me this _23_ day of June, 2005.

_____
Notary Public
My commission expires:



ANNE KULIK
Notary Public
Commonwealth of Massachusetts
My Commission Expires Dec 22, 2006

4

AFFIDAVIT OF JOHN BARRON

I, John Barron, state the following under oath:

1. I am employed as a Special Agent with the Drug Enforcement Administration and have been so employed since 1999. During the course of my law enforcement career, I have written and/or executed in excess of 20 search and seizure warrants for narcotics, dangerous drugs, records, and proceeds and assets obtained as a result of this illicit activity including several luxury vehicles. Further, I have conducted in excess of 50 drug investigations which have resulted in successful prosecutions, numerous arrests, including the seizures and subsequent forfeitures of proceeds and assets obtained as a result of drug trafficking. I have attended numerous DEA training courses and seminars in drug investigations and asset forfeiture. Those courses and seminars include, but are not limited to, courses in basic drug investigations, complex drug conspiracy investigations, undercover investigations, financial investigations, and asset forfeiture school. Based on my training and experience, I am familiar with the methods used to package and distribute illegal drugs, the codes and shorthand employed in the illegal narcotics business, and the techniques used to conceal illegal drugs, their distribution and their proceeds from law enforcement.

2. I submit this application in support of a Complaint for Forfeiture <u>in rem</u> against the following property:

> a white 2002 Cadillac Escalade, Vehicle Identification Number 3GYEK63N92G219882 (the Cadillac Escalade).

3. The Cadillac Escalade is subject to forfeiture to the United States pursuant to 21 U.S.C. §881(a)(6) as it represents moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act, Title 21, United States Code, Sections 801 <u>et seq</u>. (the "Controlled Substances Act") or proceeds traceable to such an exchange.

4. The information contained in this affidavit is based upon my own personal observations, as well as observations of other officers and agents, made during the investigation, information provided by cooperating individuals and my review of reports, documentary and physical evidence. This affidavit does not contain all information obtained by law enforcement officers in the course of this investigation, but is limited to that information necessary to support the complaint for forfeiture.

5. **The investigation.** In the spring of 2003, the Chicopee police learned from a cooperating individual (CI1) that an African-American male known as "Mike" was selling cocaine from an apartment located at 368 Meadow Street, Chicopee, Massachusetts. Detective Paul Gay, along with several other Chicopee police officers, arranged a controlled purchase, during which CI1, acting under the officer's direction telephoned "Mike" and arranged for "Mike" to deliver cocaine to an agreed-on location. The officers observed a short African-American male leave 368 Meadow Street and travel to the prearranged location. There, CI1 met with "Mike" and purchased cocaine using funds provided by the Chicopee police. Motor vehicle records and a photo identification by CI1 revealed that "Mike" was a nickname for Roosevelt Archie, a/k/a Archie Roosevelt (Archie).

6. Based on this controlled cocaine purchase, the Chicopee police obtained a state search warrant for the second floor apartment at 368 Meadow Street. The search warrant was executed on April 17, 2003. During the search, law enforcement found, among other things, an electronic scale with what appeared to be cocaine residue, a small quantity of marijuana, $3,469 in United States currency and a loaded .380 caliber handgun and additional .380 caliber bullets. In addition, the officers found two clear plastic

-3-

bags containing an aggregate weight of 13.8 grams of a white chunky substance that appeared to be crack cocaine. The first plastic bag contained 17 individually packaged clear plastic bags, each containing what appeared to be crack cocaine. The second plastic bag contained 6 individually packaged clear plastic bags, each containing what appeared to be crack cocaine.

7.  Archie was arrested and charged with a number of state narcotics and weapons charges, including possession of cocaine with intent to distribute. Following his arrest, Archie, signed a Miranda waiver and provided a signed statement to the Chicopee police. In this statement, dated April 18, 2003, Archie stated "I have been out of work for over a year." He went on to say that "times are tough" and, because of his lack of employment "I started selling marijuana." in order "to support my family." Archie claimed that he had been selling marijuana for "about three years" but was "not a big dealer" since he "only sell[s] small bags of pot for twenty dollars a bag."

8.  In April 2003, Archie was released on $25,000 surety by the Chicopee District Court. In July 2003, Archie was indicted on parallel charges in the state Superior Court and the state District Court case was dismissed.

9.  **The federal criminal action: United States v. Archie, No. 04-30004.** Based on the drugs and firearm found

-4-

during the April 17, 2003 search, on February 19, 2004, a federal grand jury returned a three-count indictment against Archie, charging him with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §922(g)(1) (Count One); possession with intent to distribute cocaine base, and aiding and abetting, in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2 (Count Two); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. 924(c)(1)(Count Three). In addition, the indictment contained a forfeiture allegation, pursuant to 21 U.S.C. §853, seeking the forfeiture of any proceeds obtained directly or indirectly as a result of his possession of cocaine base with intent to distribute and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violation.

10. Archie pled not guilty and the United States moved for detention. A hearing was held and, in a memorandum dated March 4,2004, the Court (Neiman, U.S.M.J.), denied the United States's motion for detention. In its memorandum, the Court noted that Archie "has a sporadic employment history and is presently unemployed." In addition, as one of the reasons supporting Archie's release, the Court stated that it "also believes that [Archie] does not have the financial wherewithal to flee."

11. On April 7, 2004, the Court issued an order setting conditions of release for Archie. These included refraining from the use of drugs. In addition, the Court's order required Archie to maintain residence at 101 Davenport Street, Springfield, Massachusetts.

12. **Archie's purchase of the Cadillac Escalade while on release**. While on release in the federal drug case, Archie purchased the Cadillac Escalade, paying $17,500 in cash. Archie bought the Cadillac Escalade on October 28, 2004 from RP Auto Sales in Palmer, MA. The bill of sale noted that the Cadillac Escalade was sold "as is" and noted that the vehicle "needs interior work, front and rear bumpers and body work on driver's door." Archie registered the Cadillac Escalade in Connecticut and was given a temporary registration which expired on December 3, 2004.

13. Immediately following the purchase of the Cadillac Escalade, Archie paid cash for significant repairs and improvements to the vehicle. Specifically, an invoice from Sir-Tech Auto in Springfield, Massachusetts indicate that on October 29, 2004, Archie ordered repairs to the rear bumper cover, the front bumper and the right front door of the Cadillac Escalade. These repairs totaled $1275, which Archie paid in cash. In addition, an invoice from Wired Speed and Sport in Springfield, Massachusetts dated November 8, 2004, indicates that Archie paid $2000, also in cash, for

-6-

what is described as "mtx 12"with mtx amp with clarion flip screen," and which is apparently an in-car television system. I have inspected the Cadillac Escalade and, in contrast to the description in the bill of sale, the vehicle now appears to be in perfect condition. Based on my inspection of the car, I believe that Archie had additional repair work performed on the Cadillac Escalade.

14. **Archie's release is revoked**. On November 22, Pretrial Services submitted a memorandum to the Court, advising the Court that a urine sample submitted by Archie on November 12, 2004 had tested positive for cocaine. When questioned, Archie denied any drug use.

15. The Court held a revocation hearing on November 23, 2004, at which Archie admitted to a single use of cocaine. The Court informed Archie that, if he tested positive again, he will have his conditions revoked. In addition, the Court ordered Pretrial Services to increase Defendant's drug testing.

16. The day after the hearing, November 24, 2004, Archie submitted another urine sample that tested positive for cocaine. In addition, on December 7, 2004, Archie submitted an additional urine sample that also tested positive for cocaine. Pretrial Services reported both of these violations to the Court, and, on December 7, 2004, following a hearing, the Court revoked Archie's release.

Since December 7, 2004, Archie has been incarcerated at the Hampden County House of Correction

17. Archie is scheduled to have a change of plea hearing on June 29, 2005, at which he is expected to plead guilty to all three counts of the indictment.

18. **Archie's cocaine dealing while on release**. While the federal criminal case against Archie was proceeding as described above, DEA continued to investigate Archie's cocaine dealing, including the Archie's continued cocaine trafficking while on release. On November 12, 2004, a cooperating individual (CI3) informed DEA that, within the preceding two weeks, on two separate occasions, CI3 had been present when Archie sold between a quarter and a half ounce of cocaine to two individuals named Charlie Russi and Jeff Clark.

19. CI3 specified that these transactions occurred near or at 101 Davenport Street in Springfield, Massachusetts, the address at which, under the Court's order setting conditions of release, Archie was required to maintain residence. CI3 related that, on one of these occasions, Russis had walked down to 101 Davenport Street and met with Archie, and had then returned with cocaine. During the other incident, Russis met with Archie between

101 Davenport Street and the intersection of Harvey Street, where he had made a purchase of cocaine.

20. **The November 30, 2004 cocaine deal**. On November 30, 2004, CI3, acting under the direction of law enforcement officers, made a controlled purchase of approximately one ounce of cocaine from Archie and Clark. At approximately 4:39 pm, CI3 met with Clark at McCarthy's Tavern in Springfield, Massachusetts. Clark then called Archie and arranged for the purchase of one ounce of cocaine. At approximately 4:45 pm, CI3 and Clark left the parking lot of McCarthy's Tavern and went to Hollywood Video at 645 Boston Road. Archie arrived at Hollywood Video in a tan Nissan Altima at approximately 5:10 pm. Archie refused to do a hand-to-hand deal with CI3, so CI3 gave Clark $1150 previously provided by DEA. A few minutes later, Archie and Clark were seen by DEA agents in the tan Nissan Altima. Shortly thereafter, the tan Nissan Altima was seen parked at 101 Davenport Street. At about 5:20 pm, Special Agent Clifford saw Archie get into the tan Altima and drive a short distance to Stuart Street, where the Altima stopped and picked up Clark. Clark was dropped off at the intersection of Stuart Street and Boston Road. At about 5:25 pm, Clark was seen walking towards the parking lot of Hollywood video and entering a car with CI3.

Following this transaction, CI3 provided DEA with approximately one ounce of cocaine.

21. **Additional information about Archie's drug dealing.** In addition, on January 4, 2005, DEA spoke to another cooperating individual (CI4) about Archie's cocaine trafficking activities. CI4 stated that, during the past two years, he/she had purchased drugs from Archie on a weekly basis and had also brokered drug purchases through Archie for CI4's acquaintances. CI4 noted that Archie was primarily a crack cocaine dealer, but also sold powder cocaine to CI4 and his/her acquaintances in increments of $140, $240 and $550.

22. CI4 described a drug deal with Archie that had occurred while Archie was on release in July 2004. At that time, CI4 contacted Archie and asked to buy a sixteenth of an ounce of powder cocaine. Archie told CI4 to meet him at the Corner Stone Lounge in Springfield, Massachusetts. Upon entering the Corner Stone Lounge, CI4 saw Archie with a white plastic grocery bag. CI4 and Archie left the bar and went to Archie's car, where Archie opened the white plastic grocery bag and showed CI4 two clear zip-lock bags containing powder cocaine. Archie told CI4 that the white plastic bag contained a total of two kilograms of cocaine of powder cocaine. Using a digital scale, Archie weighed out CI4's cocaine and sold the cocaine to CI4 for $80.

23. CI4 noted that all of the cocaine transactions with Archie had occurred within a mile of Archie's residence at 101 Davenport Street, where CI4 believed that Archie stored his cocaine.

24. **Cocaine dealing by Archie's girlfriend at Archie's direction after Archie is incarcerated**. In addition, CI4 stated that within the four-week period prior to January 4, 2005, CI4 had purchased approximately two and a half ounces of powder cocaine from Archie's girlfriend, "Sandra." "Sandra" was later identified as Yolanda Jones. This four week period prior to January 4, 2005 during which CI4 noted that he had been buying cocaine from Archie's girlfriend approximately corresponds to the date on which Archie's release was revoked and he was incarcerated -- December 7, 2004.

25. Further investigation, including the subpoena of recorded conversations of calls made by Archie from the Hampden County House of Correction after his release was revoked, revealed that Archie was directing Jones' cocaine trafficking activities from prison, by arranging for her purchases of cocaine. In addition, on January 28, 2005, CI4 and DEA Task Force Agent Michael Martin, acting in an undercover capacity, met with Jones. During this meeting, CI4 purchased three rocks of crack cocaine from Jones for $150.

26. **The seizure of the Cadillac Escalade.** On February 2, 2005, DEA learned that Jones and her brother, Kelvin Jones, intended to move the Cadillac Escalade to Archie's mother's house for safekeeping. DEA contacted the Springfield Police Department, who stopped and towed the Cadillac Escalade because it was being driven without proper insurance or registration. On February 18, 2005, this Court (Neiman, N.J.) issued a seizure warrant, authorizing seizure of the Cadillac Escalade on the ground that it was subject to forfeiture to the United States pursuant to 21 U.S.C. §881 and 21 U.S.C. §853 as proceeds of illegal narcotics transactions.

27. **The arrest of Jones and her statements regarding Archie's drug dealing and employment history.** On February 7, 2005, Jones was arrested by the DEA while attempting to deliver approximately one ounce of cocaine to a cooperating individual. DEA agents recovered approximately 25 grams of cocaine from Jones and, pursuant to a consent search, recovered approximately 75 grams of cocaine from the apartment at 101 Davenport Street. In addition, at the 101 Davenport Street apartment the agents found two digital scales, a cutting agent, baggies, a 9mm semi-automatic firearm with an obliterated serial number and 9mm bullets.

28. At the time of her arrest, Jones made a number of statements about Archie. Jones told the arresting agents

that she had been in a relationship with Archie for approximately six years. Jones said that Archie had been dealing drugs for approximately the past three years, primarily selling crack cocaine, but that Archie had recently started selling powder cocaine. Jones estimated Archie's profits at about $500-$800 per week and stated that she believed that Archie had between five and ten drug customers.

29. Jones also explained that, since Archie's incarceration, she had been "working and making sales for him," selling crack and powder cocaine to about five of Archie's customers. Jones elaborated that Archie would call her from prison and direct her to call Archie's supplier (whose name she did not know). Jones, Archie and Archie's supplier would then participate in a three-way call in which Archie would order crack and powder cocaine from his supplier and arrange for Jones to purchase the drugs for resale.

30. In the interview with DEA, Jones also discussed Archie's work history, stating that Archie has most recently worked as a janitor in a barber shop, under the table, and was making about $150.00 per week. She also described several other laborer positions that Archie had held in the past three years, stating that he made approximately $8.00/hour at these jobs.

31. **Conclusion.** Based upon the facts stated above, there is probable cause to believe that the Cadillac Escalade represents proceeds traceable to illegal drug transactions. Accordingly, there is probable cause to believe that the Cadillac Escalade is forfeitable to the United States of America pursuant to 21 U.S.C. §881(a)(6).

Signed under the pains and penalties of perjury this 23RD day of June, 2005.

_____
JOHN BARRON
Special Agent
United States Drug
Enforcement Administration

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

2002 Cadillac Escalade, Vehicle Identification Number 3GYEK63N92G219882

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney'S (Firm Name, Address, and Telephone Number)

Jennifer H. Zacks, AUSA
US Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA 02210  (617) 748-3100

Attorneys (If Known)

05-30156-KPN

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS |  | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury—Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury—Product Liability | [X] 625 Drug Related Seizure of Property 21 USC |  | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability |  | [ ] 640 R.R & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | **LABOR** | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability |  |  | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** |  | [ ] 863 DIWC/DIWW (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence Habeas Corpus: | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment |  |  | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |  |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other |  | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property |  | [ ] 550 Civil Rights |  |  | [ ] 890 Other Statutory Actions |
|  |  | [ ] 555 Prison Condition |  |  |  |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from another district (specify)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

United States seeks forfeiture of Defendant Vehicle pursuant to 21 U.S.C. §881(a)(6) for violation of the Controlled Substances Act, 21 U.S.C. §801 et seq.

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE Michael A. Ponsor    DOCKET NUMBER 04-30004

DATE 06/24/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ____  AMOUNT ____  APPLYING IFP ____  JUDGE ____  MAG. JUDGE ____

This form was electronically produced by Elite Federal Forms, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) United States of America v. 2002 Cadillac Escalade, Vehicle Identification Number 3GYEK63N92G219882

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   __ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   X II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   __ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   __ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   __ V. 150, 152, 153.

   05-30156-KPN

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   United States v. Roosevelt Archie    04-30004-MAP

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐    NO ☒
   If so, is the u.s.a. or an officer, agent or employee of the u.s. a party?
   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 usc §2284?
   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the commonwealth of massachusetts ("governmental agencies"), residing in massachusetts reside in the same division? - (See local rule 40.1(d)).
   YES ☐    NO ☐    Not Applicable

   A. If yes, in which division do all of the non-governmental parties reside?
   Eastern Division ☐    Central Division ☐    Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
   Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES ☐    NO ☐    Not Applicable

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME Jennifer H. Zacks, Assistant United States Attorney
ADDRESS U.S. Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA 02210
TELEPHONE NO. 617-748-3100

(Cover sheet local.wpd - 09/12/02)